Gibson, C. J.
I regret that in some respects I am compelled to dissent from the opinion just delivered. A recital may, undoubtedly, amount to a covenant, although that is by no means a necessary consequence. Mr. Powell, in a note to his edition of Wood’s Conveyancing, (202) takes a distinction between the recital of a fact, and the recital of a deed; the former being the foundation of an action of covenant, or a decree of specific performance, and the latter, when untrue, being void, as a reference to nothing; and the eases which he cites bear him out. The foundation of the distinction, I take to be the intention of the parties, the recital being an agreement or not, just as the grantor may be supposed to affirm the existence of a fact, and pledge himself for the truth of it. Accordingly, a recital which is only matter of description, does not, under any circumstances, become a covenant, as where the quantity of the land is mentioned, in addition to the boundaries. Powel v. Claris, (5 Mass. II. 355.) What is the nature of the recital in the case before us? The defendant conveys to the plaintiff and another since dead, “ the following described piece or parcel of land, situate, and being in Hellam township, York county, bounded and limited as follows: Beginning at a rock at the Susquehannah, thence south, and to the place of beginning, containing ten acres neat measure.” Now this, without more, would have been altogether vague and uncertain; the name of the township and county, and the indefinite object mentioned as the place of beginning,'-having ascertained nothing. But when the tract is further described, as part of 58 acres late the property of John Whitehill which were decreed to him by the Orphans’ Court of York county, and which James Whitehill and others, the heirs of John, by their deed of release, had confirmed to the defendant, the'tract may be identified with certainty. Then the matter comes to this: Did the defendant use these terms to define the subject of the grant, or to assert that he was seised of an indefeasible estate in fee simple? Of his actual meaning I cannot bring myself to doubt. Under any natural or reasonable construction the words do not import an assertion, and the necessary conclusion of fact can be reached, if at all, only by inference and a chain of consequences, as a foundation for a further inference by implication of law, which I submit is much too remote. ' In transactions of this sort, such a construction would defeat the intention of the parties in ninety-nine cases in a hundred, and in so many cases would the grantor find himself implicated in covenants to which he never dreamt of becoming a party. There is so much practical good sense — so much that comes home to every man’s business and bosom — in the opinion of Livingston, J., in Frost v. Raymond, (2 Caines’ Rep. 196,) that I cannot resist a desire to extract the following passage from it: “Nor is there,” says he, “any thing hard or inequitable in denying to the word grant, and to- all the others here used, a sense *114 which ex vi termini no one of them imports, and which it is a hundred to one, was. not contemplated by either party. In conveyances of real estate, there must always be danger in implying any thing that is not stipulated in clear and precise terms. This is the safest way of determining the extent of the grantor’s responsibility. Whether he is to defend the property against particular incumbrances, or against those who claim under him, or against all the world, ought not to depend on the equivocal or ambiguous meaning of terms used in the granting clause, but on plain and express covenants, which are now therefore uniformly inserted, where it is intended to render the grantor or his heirs liable, in case of eviction or defect of title.”
But, were all this otherwise, still, where the parties have particularly designated what they understood to be the extent of their liability, the law will not by implication carry it further. And this rests not merely on its own intrinsic and unquestionable good sense, but also on unquestionable authority. Mr. Butler gives it (Co. Lit. 384, a. note, 333,) as the result of the English decisions; and Cruise, (Dig. Tit. Deed, ch. v. sect. 11,) says an express covenant will qualify the generality of an implied covenant, so that it shall not extend further than the express covenant; and for this he cites Noke’s Case, 4 Rep. 80, b., 1 Mod. 113, and 1 Ves. 101; and these again are fortified by the decisions of the Supreme Court of New York. It is true, that in Noke’s Case, Lord Coke remarks, that an implied and express warranty may exist together, if both be general. Undoubtedly they may, and so may any other covenants, which are generically, and specifically the same, and which, consequently, produce the same measure of responsibility. But, where the parties insert a covenant of special warranty, the law will not imply a general warranty, because the latter is inconsistent with the former, and would carry the liability of the grantor further than the point of limitation affixed to it by the parties themselves. This is all that is meant by the dictum in Gales v. Caldwell, (7 Mass. 68,) that there may be implied covenants, where they are not inconsistent with those in the deed: in other words, that they may stand together when they mean exactly the same thing. But it may safely be affirmed, that no case can be found, in which a covenant has been implied that created a new responsibility, or increased an existing one; as must necessarily happen here, by implying a covenant of seisin, where the grantee has only thought proper to stipulate for a general warranty. In Noke’s Case, the implied covenant was different from the express covenant in degree, being larger, and here it is different in kind; but there is the same discrepance in each, and the same room for the covenantor to say, non in hsec federa veni. I am of opinion, therefore, that the plaintiff could maintain an action on this deed only for a breach of the warranty; but I concur on all the other points.
*115 Duncan, J.
On the construction of the conveyance as to the effect of the recital by the grantor of his title, in which the Chief Justice, and my brother Huston disagree, I agree to the construction of the latter. This is not a matter of description of the quantity of the estate, as to its boundaries, but of the quality and nature of the title — a description of the title by which he held it, and is a covenant that he held that title, and is not controlled by the covenant of general warranty.
Rogers, J., did not sit during the argument, and gave no opinion.
Judgment reversed, and a venire facias de novo awarded.